**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA

VERSUS

MURPHY J. PAINTER

CRIMINAL ACTION

NO. 12-87-JJB-SCR

## RULING ON MOTIONS *IN LIMINE*

This matter is before the court on the Government's Motion (doc. 54) *in Limine* Regarding Potential Penalties and Motion (doc. 59) *in Limine* to Admit Evidence of Non-Charged Database Inquiries. Defendant Murphy J. Painter ("Defendant") has opposed both motions (docs. 74 & 77), and the Government has replied to each opposition (docs. 91 & 93). Oral arguments were conducted on September 10, 2013. For the reasons stated herein, the Court **GRANTS** the Motion (doc. 54) *in Limine* Regarding Potential Penalties and **DENIES IN PART** the Motion (doc. 59) *in Limine* to Admit Evidence of Non-Charged Database Inquiries.

### Background

An indictment (doc. 1) charges Defendant with 42 counts of computer fraud, making false statements, and aggravated identity theft resulting from his alleged misuse of computerized criminal history and motor vehicle databases while he was the Commissioner of the Louisiana Office of Alcohol and Tobacco Control ("ATC"). Defendant was authorized to access the databases through the Louisiana Law Enforcement Telecommunications System ("LLETS"). The Law Enforcement Message Switch ("LEMS"), which is a computer located in Baton Rouge, Louisiana, provides access to LLETS.

The first 24 counts in the indictment, the "NCIC charges," result from Defendant's alleged obtaining of criminal history record information from the National Crime Information

Center ("NCIC"), a nationwide computerized information system maintained by the Federal Bureau of Investigation, which contains criminal background information on individuals residing in the United States. The Government alleges Defendant unlawfully conducted eight criminal background inquiries on six different individuals between June 6, 2007 and August 4, 2010, without a criminal justice purpose. The Government alleges that Defendant input purpose code "C" each time he conducted one of these inquiries, thereby falsely representing that he had a criminal justice purpose for the inquiries. The Government alleges that Defendant knowingly transferred, possessed, and used, without lawful authority, the means of identification of the persons on which he conducted these inquiries. The indictment contains three different charges for each of the eight inquiries: computer fraud, making a false statement, and aggravated identity theft. The computer fraud charges constitute counts one through eight, the false statement charges constitute counts nine through 16, and the aggravated identity theft charges constitute counts 17 through 24.

Counts 25 through 42—the "OMV computer fraud counts"—relate to Defendant's alleged unlawful obtainment of information from the Louisiana Office of Motor Vehicles ("OMV") through LLETS. These counts are allegedly the result of 18 inquires of the OMV from June 7, 2007 through January 30, 2010 in order to obtain driver's license information of certain individuals (the "OMV victims"), without a criminal justice purpose. Defendant is charged with one count of computer fraud for each alleged inquiry.

The Government has filed multiple Motions *in Limine* in this case. While some of the motions were ruled on at the oral argument conducted on September 10, 2013 and others were deferred until a later hearing, two of the motions were taken under advisement for a written ruling. The first is the Motion *in Limine* whereby the Government requests this Court to "exclude

any argument, witness questioning, or remarks by the defense at trial regarding the potential penalties for the charged offenses." (Doc. 54, p. 1). In opposition, Defendant asserts that he "intends to ask the Court to instruct the jury as to the mandatory minimum" sentence, as this is necessary "for the jury to perform the role guaranteed by the jury-trial right." (Doc. 74, p. 1, 3). The second Motion *in Limine* concerns the potential admission of non-charged database inquiries under Rule 404(b) of the Federal Rules of Evidence. Of relevance, the Government seeks to "introduce evidence that defendant conducted inquiries on two of the victims prior to the inquiries charged in the indictment" and "evidence of a limited number of inquiries regarding individuals not mentioned in the indictment." (Doc. 59, p. 4). Defendant opposes the introduction of this evidence because: (1) "the uncharged inquires do not increase the likelihood that [Defendant] had unlawful intent in making the charged inquiries," (2) "the Government has not proven that the uncharged inquiries constituted an offense," and (3) "litigation of whether the uncharged inquiries were criminal would be burdensome to the Court and confusing to the jury." (Doc. 77, p. 2).

**Analysis**

1.  <u>Motion *in Limine* Regarding Potential Penalties (Doc. 54)</u>

The Government seeks to bar the defense from making any reference before the jury to the potential sentence in this case. In opposition, Defendant wants this Court to inform the jury regarding the mandatory minimum sentence that will be imposed if he is convicted of the charged offenses. (Doc. 74, p. 1). If Defendant is convicted on all counts, he will face a prison term between a minimum of two years and a maximum of 82 years. (Doc. 54, p. 2). While this Court respects defense counsel's argument, this Court refuses to contravene the current

precedent, and thus, will not inform the jury regarding either the minimum or maximum sentence.

In *Shannon v. United States*, the Supreme Court clearly stated:

> It is well established that when a jury has no sentencing function, it should be admonished to "reach its verdict without regard to what sentence might be imposed." The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.

512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)).

Furthermore, the Fifth Circuit has provided:

> To inform the jury that the court may impose minimum or maximum sentence, will or will not grant probation, when a defendant will be eligible for a parole, or other matters relating to disposition of the defendant, tend to draw the attention of the jury away from their chief function as sole judges of the facts, open the door to compromise verdicts and to confuse the issue or issues to be decided.

*Pope v. United States*, 298 F.2d 507, 508 (5th Cir. 1962). Additionally, in a subsequent case, the Fifth Circuit cited with affirmation its statement in *Pope* and went on to provide:

> It is the function of the jury to determine the facts and thereby the guilt or innocence of the defendant. It is the function of the judge to impose sentence. Recognizing that ordinarily there is no reason why the jury should be advised of something that has nothing to do with its duty, Appellant contends that knowledge of the mandatory nature of the sentence would make the jury take a closer look at the evidence before them on the issue of guilt. But this is not the jury's function. The jury is to find guilt or innocence on the basis of the legal standards set out in the Judge's charge, and the consequence in terms of punishment is a matter for Congress on mandatory sentences or for the Court within limits fixed by the statute.

*United States v. Del Toro*, 426 F.2d 181, 184 (5th Cir. 1970).

While the Supreme Court in *Shannon* did provide that "an instruction of some form [regarding possible sentencing] may be necessary under limited circumstances," it did so specifically in the context of a verdict of "not guilty only by reason of insanity." *Shannon*, 512 U.S. at 587. As an example of a situation where an instruction regarding possible sentencing would be necessary, the Supreme Court cited to the instance of "a witness or prosecutor stat[ing] in the presence of the jury that a particular defendant would 'go free' if found NGI," or not guilty only by reason of insanity. *Id*. The present matter is completely dissimilar, and there are no other persuasive reasons for this Court to provide or allow a statement to the jury regarding the potential sentencing. The jury's sole function in this case is to determine the guilt or innocence of the Defendant based on the facts provided to them, and there are no other circumstances present to warrant a statement to the jury regarding the minimum sentence the Defendant faces if convicted. Therefore, based on existing precedent, this Court will not instruct the jury as to the mandatory minimum sentence, and defense counsel will not be permitted to ask questions, elicit testimony, introduce documents, or make arguments concerning potential penalties that Defendant may face if convicted.

2. Motion *in Limine* to Admit Evidence of Non-Charged Database Inquiries (Doc. 59)

Next, the Government seeks to admit evidence of uncharged database inquiries, including (1) inquires on three individuals prior to the inquiries charged in the Indictment and (2) inquiries on approximately 20 individuals not mentioned in the Indictment. The Government wants to admit this evidence under Rule 404(b) of the Federal Rules of Evidence. Defendant counters that this evidence is not admissible for three reasons: (1) the non-charged inquires do not increase the likelihood that Defendant had unlawful intent in making the charged inquiries, (2) the Government has not proven that the non-charged inquires constituted an offense, and (3)

litigation of whether the non-charged inquiries were criminal would be burdensome to the Court and confusing to the jury. (Doc. 77, p. 2).

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "'Other act' extrinsic evidence need not be evidence of other wrongful acts but may be evidence of any extrinsic acts relevant to the criminal act charged." *United States v. Williams*, 900 F.2d 823, 826 (5th Cir. 1990) (citing *United States v. Rubio–Gonzalez*, 674 F.2d 1067, 1075 (5th Cir. 1982)). In *United States v. Beechum*, the Fifth Circuit established the two-part test that courts utilize to determine whether to admit extrinsic evidence under Rule 404(b). *See* 582 F.2d 898, 911 (5th Cir. 1978). The two-part test is as follows: "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." *Id.*

a. *Relevancy*

The test for relevancy under the first prong is the same test used under Rule 401. *Id.* "The standards are established by rule 401, which deems evidence relevant when it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* (quoting Fed. R. Evid. 401). "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably

conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988).

In cases where intent is the primary issue, extrinsic evidence can help establish that the defendant had the requisite intent in the charged action. "[I]f the issue is intent, then the extrinsic evidence of a prior act is relevant if it required the defendant have the same state of mind or intent as the charged offense." *United States v. Vazquez*, 370 F.App'x 459, 468 (5th Cir. 2010). As the Fifth Circuit provided in *Beechum*:

> Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.

582 F.2d at 911.

Nevertheless, "the line of reasoning that deems an extrinsic offense relevant to the issue of intent is valid only if an offense was in fact committed and the defendant in fact committed it." *Id.* at 912. "[A]s a predicate to a determination that the extrinsic offense is relevant, the Government must offer proof demonstrating that the defendant committed the offense." *Id.* at 912−13. If the Government fails to offer sufficient proof, the evidence is excluded as irrelevant. *Id.* at 913. In making this determination, a judge must utilize the standard of proof supplied in Rule 104(b) of the Federal Rules of Evidence. "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Fed. R. Evid. 104(b). "As the rule provides, the task for the trial judge is to determine whether there is sufficient evidence for the jury to find that the defendant in fact committed the extrinsic offense." *Beechum*, 582 F.2d at 913. The Government does not need to present clear and convincing proof,

as the judge does not need to be "convinced beyond a reasonable doubt that the defendant committed the extrinsic offense." *Id.* "Although a preliminary judicial finding under Rule 104(a) that the extrinsic act occurred is not required, relevancy does command the proponent of the 404(b) testimony to tender sufficient proof to permit a reasonable jury to find the existence of the conduct by a preponderance of evidence." *United States v. Osorio*, 288 F.App'x 971, 975 (5th Cir. 2008) (citing *Huddleston*, 485 U.S. at 689). To assess "the sufficiency of the evidence under Rule 104(b), the trial court must consider all evidence presented to the jury." *Huddleston*, 485 U.S. at 690−91.

In the present matter, Defendant is alleged to have (1) "<u>intentionally</u> exceeded his authorized access"; (2) "<u>knowingly</u> and <u>willfully</u> made materially false, fictitious, and fraudulent statements and representations . . . by in-putting purpose code 'C' in connection with Triple I inquiries"; (3) "<u>knowingly</u> transfer[ed], possess[ed], and use[d], without lawful authority, a means of identification of certain individuals"; and (4) "<u>intentionally</u> exceeded his authorized access to a computer and thereby obtained information from a protected computer." (Doc. 1, p. 4−6). The key issue will be Defendant's intent and whether he conducted the inquiries for non-criminal justice purposes (i.e., with intent to exceed his authorized access). This Court finds that the Government has satisfied the first part of the Rule 404(b) inquiry. In their reply, the Government outlines the non-charged database inquiries that it seeks to utilize in its case-in-chief. (*See* Doc. 93, p. 3−5). Based on the totality of the evidence, a reasonable jury could find by a preponderance of the evidence that the Defendant conducted the non-charged database inquiries, and that he conducted these inquiries for a non-criminal justice purpose. Clear and convincing proof is not required to make a proper showing of relevancy under Rule 404(b); all that is required is a showing, based on the totality of the evidence, which would convince a

reasonable jury by a preponderance of the evidence. This court find the Government has made a sufficient showing regarding the extrinsic evidence, and thus, the evidence of the specific, non-charged database inquiries is relevant under the reasoning of *Beechum*—"because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense." *Beechum*, 582 F.2d at 911.

      b.  *Probative Value Versus Undue Prejudice*

Even if the extrinsic evidence is relevant under the first prong, the court must exclude the evidence if it fails to satisfy the balancing test under Rule 403. "Rule 403 'would seem to require exclusion only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'" *United States v. Cockrell*, 587 F.3d 674, 679 (5th Cir. 2009) (quoting *Beechum*, 582 F.2d at 915 n.20). "[T]he central concern of rule 403 is whether the probative value of the evidence sought to be introduced is 'substantially outweighed by the danger of unfair prejudice.'" *Beechum*, 582 F.2d at 913 (quoting Fed. R. Evid. 403). "It is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice." *Id.* at 914. In determining the balancing of prejudice versus probative value, the Fifth Circuit utilizes several factors, including: "(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions." *United States v. Kinchen*, 2013 WL 4766670, at *5 (5th Cir. Sept. 5, 2013). The Fifth Circuit has also looked at the posture of the case and "how much time separates the extrinsic and charged offenses." *Beechum*, 582 F.2d at 915.

"For purposes of the second *Beechum* prong, a similarity between the elements of a prior extrinsic offense and the elements of the charged offense may enhance the probative value of the extrinsic evidence." *United States v. Thomas*, 294 F.App'x 124, 130 (5th Cir. 2008). However, "the more closely the extrinsic offense resembles the charged offense, the greater the prejudice to the defendant." *Beechum*, 582 F.2d at 915 n.20. "A similarity between the offenses . . . increases the risk of prejudice; so, when the government adduces strong evidence of intent, extrinsic offense evidence should be more readily excluded." *Cockrell*, 587 F.3d at 679. (citing *United States v. Bermea*, 30 F.3d 1539, 1562 (5th Cir. 1994)). "Inversely, when the direct evidence of intent is slight, the probative value of extrinsic evidence is enhanced." *Id.* (citing *United States v. LeBaron*, 156 F.3d 621, 625 (5th Cir. 1998)). But, the Court must always be mindful that "[t]he likelihood that the jury will convict the defendant because he is the kind of person who commits this particular type of crime or because he was not punished for the extrinsic offense increases with the increasing likeness of the offenses." *Beechum*, 582 F.2d at 915 n.20.

In the present matter, the non-charged database inquiries that the Government seeks to admit are nothing more than additional, cumulative evidence. The Defendant has already been indicted for numerous instances of allegedly unlawful inquiries, and the Government now seeks to admit additional database inquiries that were not included in the indictment as extrinsic evidence of intent. The charged offenses and the extrinsic offenses are effectively identical, as they all involved database searches that were allegedly conducted for a non-criminal justice purpose. The strong, if not exact, similarity between these offenses is likely to confuse the jury and substantially increases the likelihood the jury will convict the Defendant "because he is the kind of person who commits this particular type of crime." *Id.* Furthermore, due to the extreme similarity between the charged and non-charged inquiries, admission would strongly increase the

chance of the jury convicting the Defendant for the non-charged inquiries, as opposed to the charged database inquiries that were included in the Indictment. Finally, presenting additional instances of allegedly wrongful inquiries, in addition to the plethora of already-charged database inquiries, would give rise to a strong emotional reaction by jurors based on the sheer number of alleged instances and would result in a substantial risk of jurors ruling based on emotions rather than facts. Accordingly, due to this strong similarity, the Court finds that the extrinsic evidence is highly prejudicial, and its probative value does not outweigh this prejudice. Therefore, the Rule 404(b) two-prong analysis is not satisfied. The Government could have initially charged the Defendant for these database inquiries, rather than seeking to enter this cumulative evidence at trial, which this Court finds will unduly prejudice the jury.

Accordingly, this Court partially denies the Government's Motion (doc. 59) *in Limine* to Admit Evidence of Non-Charged Database Inquiries, as far as it concerns the (1) uncharged inquires on three individuals prior to the inquiries charged in the Indictment and (2) uncharged inquiries on approximately 20 individuals not mentioned in the Indictment. This ruling does not affect the Government's motion with regards to the admissibility of (1) summary evidence or (2) testimony by ATC employees regarding Defendant's use of the databases and his instructions to employees regarding the databases.

**Conclusion**

Therefore, the Government's Motion (doc. 54) in Limine Regarding Potential Penalties is **GRANTED**, and the Government's Motion (doc. 59) in Limine to Admit Evidence of Non-Charged Database Inquiries is **DENIED IN PART**, as specified above.

Signed in Baton Rouge, Louisiana, on September 17, 2013.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**